IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICKEY CORNELL, II,**
*et al*.,

      **Plaintiffs,**

vs.

      Case No. 2:14-cv-27

      Magistrate Judge Elizabeth P. Deavers

**WORLD WIDE BUSINESS
SERVICES CORPORATION,**
*et al.*,

      **Defendants.**

## OPINION and ORDER

Pursuant to the parties' consent, on April 4, 2014 this case was referred to the United States Magistrate Judge to conduct all further proceedings. (ECF No. 18.) This matter is before the Court for consideration of Defendants' Motion to Decertify FLSA Collective Action (ECF No. 58), Plaintiffs' Response in Opposition to Defendants' Motion to Decertify (ECF No. 59), Defendants' Reply to Plaintiffs' Opposition to Motion to Decertify (ECF No. 60 ), Plaintiffs' Motion for Leave to File Surreply (ECF No. 61), and Defendants' Response to Plaintiffs' Motion for Leave to File Surreply (ECF No. 62). For the reasons that follow, Plaintiff's Motion for Leave to File Surreply is **DENIED**. Furthermore, Defendants' Motion to Decertify Collective Action is **GRANTED**.

## I.  Background

Plaintiffs filed their Complaint, which alleges that Defendants failed to pay earned compensation to non-exempt employees in violation of the Fair Labor Standards Act ("FLSA"), on January 10, 2014. (ECF No. 1.) Plaintiffs were, at various times, employed by Defendants as

asbestos abatement workers and worked at a number of sites throughout Ohio. Plaintiffs' standard work day was 7:00 a.m. to 3:30 p.m. or 7:00 a.m. to 4:00 p.m. with one hour of break time. (ECF No. 58-1 at 26; ECF No. 58-2 at 12.) Plaintiffs claim that they did not receive compensation for time spent "[o]n a daily basis" loading trucks before scheduled shifts, for time unloading trucks after scheduled shifts, and for time spent traveling between worksites. (ECF No. 1 at 11.) This Court granted Plaintiffs conditional certification as a FLSA collective action on August 27, 2014. (ECF No. 27.) Sixteen additional plaintiffs thereafter consented to join in the collective action. (ECF No. 42.) After completion of discovery, Defendants filed their Motion to Decertify on July 24, 2015. (ECF No. 58.)

## II.  Standard of Review

The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" for violations of FLSA's wage and hours provisions. 29 U.S.C. § 216(b). Collective actions brought by employees under FLSA require putative class members to opt into the action by giving their "consent in writing to become such a party," and are generally termed the "opt-in Plaintiffs." The statutory standard for bringing a collective action under FLSA is that the opt-in plaintiffs are "similarly situated," which does not mean plaintiffs need to be identical, but does require a factual showing that opt-in plaintiffs are similarly situated to the lead plaintiffs. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

Courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated." The first, or "notice" stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for plaintiffs' claims. If so, plaintiffs are permitted to solicit opt-in notices, under court supervision,

from current and former employees. The second stage occurs after "all of the opt-in forms have been received and discovery has concluded." *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal quotation and citation omitted).

At the first stage of conditional certification, named plaintiffs must provide only a "modest factual showing" to demonstrate that they are similarly situated to the proposed co-plaintiffs, and the court's review of this modest showing "is made using a fairly lenient standard," which "typically results in 'conditional certification' of a representative class." *Id*. at 547. "After notice has been sent and discovery has been completed, the defendant can file a motion for decertification, challenging the court's preliminary determination that other employees are similarly situated." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005).

Second-stage review is understandably more stringent as it occurs after discovery has been completed. The second review requires the district court to "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. "At this point, the court considers all the evidence . . . to determine whether the assembled class may continue as a collective action or whether the putative class should be decertified, leaving plaintiffs free to pursue their claims individually." *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 851 (N.D. Ohio 2013). "[T]he question is simply whether the differences among the Plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011).

Plaintiffs are similarly situated when their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d

863, 868 (S.D. Ohio 2011). "[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 584. Plaintiffs who show that their claims are "unified by common theories of defendants' statutory violations" are similarly situated "even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

The primary factors considered during second-stage analysis are: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available; and (3) fairness and procedural considerations. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x. 669, 671–72 (6th Cir. 2012); *O'Brien*, 575 F.3d at 584. Although courts weigh these factors during second-stage review, they must be mindful not to apply the even stricter requirements contained in Federal Rule of Civil Procedure 23 that apply to class actions because applying the predominance standard of Rule 23 would "undermine[ ] the remedial purpose of the collective action device." *O'Brien*, 575 F.3d at 584-86.

### III.  Analysis

**A.  Factual and Employment Settings**

"In considering Plaintiffs' factual and employment settings, courts review issues such as location, job duties, supervision and salaries." *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *6 (W.D. Tenn. May 17, 2011). Defendants argue that Plaintiffs' disparate factual and employment settings make decertification proper because determining liability to each plaintiff will require individualized factual showings, including showings of the actions of multiple supervisors acting at multiple job sites. (ECF No. 60 at 3.) Plaintiffs argue that any differences are superficial and irrelevant because "all [Plaintiffs]

4

maintained that they were required to work off-the-clock by their supervisors regardless of who was supervising them." (ECF No. 59 at 9.) The fact that calculating damages would require individualized factual showings, however, is not determinative of whether Plaintiffs are similarly situated because "[i]ndividualized damages determinations must be made in virtually every FLSA case involving multiple plaintiffs." *Barry v. United States*, 117 Fed. Cl. 518, 521 (2014).

Plaintiffs acknowledge in their depositions that they worked under many different supervisors at many different sites with differing shop and travel time requirements. Some employees worked for numerous supervisors (ECF No. 59-1 at 10 ("Basically I worked for everyone they had at the time, but [one].").) Some job sites required significantly less shop and travel time than others. (ECF No. 57-1 at 6 (explaining that working at job sites with dumpsters required less shop time to load and unload trucks.).) Some supervisors only used select groups of employees to do the necessary loading and unloading (ECF No. 57-1 at 7.) The fact that Plaintiffs worked under numerous supervisors, at different times, and at different locations, on jobs that required varying amounts of shop and travel time weighs against finding them similarly situated in the absence of some other unifying thread. *White*, 2011 WL 1883959 at *8.

Plaintiffs are nevertheless correct that, to proceed as a collective action, they need show only "that their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." (ECF No 59 at 3 (quoting *O'Brien*, 575 F.3d at 585).) Plaintiffs are not deemed similarly situated at the second stage, however, merely because they recite a common theory of liability. To proceed beyond the second stage "[a]n allegation of an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy or plan." *Reed v. Cnty. of Orange*, 266 F.R.D. 446, 458 (C.D. Cal. 2010); *see White*, 2011 WL 1883959 at *14 (setting forth substantial

5

evidence as standard for showing a common policy at the second stage), *aff'd*, 699 F.3d 869 (6th Cir. 2012). Where Defendants have demonstrated a formal policy to comply with the law and compensate employees for all time worked, Plaintiffs may satisfy their burden by producing substantial evidence of a *de facto* policy of circumventing the law.  *White*, 2011 WL 1883959 at *9 (citing *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 959 (W.D. Mich. 2009)).

In their Motion to Decertify, Defendants make two primary arguments against the existence of a common policy to violate FLSA.  They first contend that Plaintiffs cannot show a common theory of statutory violations because Defendants at all times operated under a formal, written policy to observe FLSA's wage and hours provisions and insufficient evidence exists to show a *de facto* policy to otherwise violate those provisions.  (ECF No. 58 at 5-6, 9-10.)  Defendants also argue that Plaintiffs cannot show a common policy because Plaintiffs were in fact compensated for shop time and for travel time.  (ECF No. 58 at 6-9.)  Plaintiffs, however, assert that Defendants had a "pervasive" policy of not compensating employees for shop time or for travel time.  (ECF No. 59 at 7.)

Defendants provide evidence, in the form of employee handbooks, that they observed a formal, written policy to compensate workers for all hours worked. (ECF Nos. 58-1 at 26 & 58-2 at 12.)  Plaintiffs argue that Defendants' handbooks cannot form the basis of a formal, written policy because Plaintiffs never received copies of them or knew of the policies. (ECF No. 59 at 4.) Plaintiffs' argument, however, is misplaced.  The question in a FLSA collective action is not whether Defendants effectively promulgated their workplace policies to their employees.  Rather, at stage two, the Court must ask whether Plaintiffs have carried their burden of showing

6

substantial evidence of Defendants' offending policies, whether formal and written or merely *de facto*. *White*, 2011 WL 1883959, at *8-9.

Charles Mauller ("Plaintiff Mauller"), one of Defendants' supervisors employed in 2012, was one of several lead Plaintiffs deposed by Defendants during discovery. He testified in a deposition that Defendants did not allow him or other workers to clock in for shop time or for travel time between job sites. (ECF No. 57-1 at 6.) Plaintiff Mauller further testified that he came in early every day to load trucks. (ECF No. 57-1 at 7.) He also stated that he was often required to unload trucks after scheduled shifts. (*Id*.) According to Plaintiff Mauller, Defendants told him not to clock in other workers "to keep down on overtime." (*Id*.) In Plaintiffs' view, this testimony "provides compelling evidence of a companywide policy of making Plaintiffs work off the clock." (ECF No. 59 at 10.)

When confronted with his own timesheets, however, Plaintiff Mauller admitted that he clocked in for shop work and for travel time between work sites on many occasions. (ECF No. 57-1 at 7-10, 17, 19, 21-24.) Similarly, Plaintiff Levi Cornell, in his deposition testimony, admitted that he was also allowed to clock in for shop time and for travel time between job sites, although he alleged violations occurred on other occasions. (ECF No. 55-1 at 6, 8, 10, 12-14.) He also testified that he and other workers failed to clock in for shop time because they were "just unaware of being allowed or not allowed to." (ECF No. 55-1 at 15.) He stated that "towards the end of my employment with them, we was [*sic*] clocking in and out at shop time." (ECF No. 55-1 at 6.) Plaintiff Fred Sharrer, in his deposition testimony, also admitted that he clocked in for shop time and for travel time between job sites on several occasions. (ECF No. 56-1 at 9-12.) Similar admissions were made by Plaintiff Fleece (ECF No. 59-1 at 12-14), Plaintiff Rickey Cornell II (ECF No. 59-2 at 8-9, 11-12), and Plaintiff Rickey Cornell, Sr. (ECF

7

No. 59-3 at 7-9). Plaintiffs did not conduct any depositions during discovery and provided no other evidence contradicting Plaintiffs' deposition testimony.

Plaintiffs have failed to produce substantial evidence that they were compelled to perform off-the-clock work pursuant to a common policy, plan, or scheme. Rather, the evidence shows that Defendants' policy was to pay its employees for all hours worked. Although Plaintiffs offer substantial evidence that some workers did perform at least occasional off-the-clock work, the evidence indicates that the decisions of individual workers and supervisors, not a company-wide policy, were the causal factor. Furthermore, Plaintiffs' own testimony suggests that a rather large amount of shop time and travel time was in fact compensated, contradicting their claim that Defendants operated under a *de facto* policy of violating FLSA's wage and hours provisions. The first factor, therefore, weighs in favor of decertification.

**B. Individualized Defenses**

The second relevant factor is the extent to which defenses appear to be individual to each plaintiff. *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700 at *7 (M.D. Tenn. Sept. 26, 2006), *aff'd*, 278 F. App'x 488 (6th Cir. 2008). The presence of many individualized defenses makes a representative class unmanageable, and "several courts have granted motions for decertification on this basis." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 2885230 at *9 (E.D. Ky. July 22, 2008).

Defendants contend that collective treatment of Plaintiffs' claims will hamper their efforts to defend against the allegations due to the necessity to cross examine every plaintiff on both factual and credibility grounds. (ECF No. 60 at 6.) After considering the defenses that will likely be appropriate in this case, the Court finds that they could be raised in a collective forum, where Defendants may present evidence of their lawful employment policies and practices, cross-

examine individual plaintiffs, and call other witnesses with material testimony that supports Defendants' case. Additionally, the Court could bifurcate the case into a liability stage, where the parties address the alleged existence of an impermissible policy or practice, and a damages one, where they could, if necessary, try the actual impact of that policy or practice on individual plaintiffs. *See Thiessen v. Gen. Elec. Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (reversing a district court's decision to decertify in a collective action where bifurcation of the case into a liability phase and a damages one was possible). Accordingly, because a collective action would allow Defendants adequate opportunity to defend themselves against Plaintiffs' claims, the second fact weighs in favor of continued certification.

## C. Fairness and Manageability

When analyzing the third factor, courts consider whether continuing the collective action comports with FLSA's "broadly remedial and humanitarian" purposes. *Wilks*, 2006 WL 2821700 at *8 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984). Courts balance the cost alleviation enjoyed by individual plaintiffs and any increase in judicial efficiency against the potential harm to defendants and any potential judicial inefficiency. *Id*. Although FLSA "must not be interpreted or applied in a narrow, grudging manner," *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 144 (6th Cir. 1977), "the remedial nature of the FLSA, standing alone, does not justify allowing a case to proceed collectively." *Crawford*, 2008 WL 2885230 at *11.

Defendants argue that, because of Plaintiffs' different employment settings and their individualized, fact-intensive defenses, the collective action would result in a series of smaller trials within the larger collective action. (ECF No. 60 at 5-6.) The necessity of "mini-trials," however, does not automatically justify decertification. *White*, 2011 WL 1883959 at *14.

9

Whereas continued certification would allow Plaintiffs to benefit from reduced individual costs, decertification would require opt-in plaintiffs to refile their claims as freestanding actions, resulting in decreased judicial economy when plaintiffs are similarly situated.  Because Plaintiffs have not shown that they are similarly situated, however, no judicial economy is gained by allowing this collective action to proceed.  Instead, continuing as a collective action would result in unfairness to Defendants and inefficiency for the Court.  Accordingly, the third factor weighs in favor of decertification.

**D. Plaintiffs' Motion for Leave to File Surreply**

Southern District of Ohio Local Civil Rule 7.2(a)(2) permits the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum.  The Rule further states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."  S.D. Ohio Civ. R. 7.2(a)(2).  This Court has routinely found good cause exists to permit a party to file a surreply to address an issue raised for the first time in a reply brief.  *See, e.g.*, *Thompson v. Transam Trucking, Inc.*, 750 F. Supp.2d 871, 884 (S.D. Ohio 2010); *Levy v. Cain, Watters & Assoc., P.L.L.C.*, No. 2:09–cv–723, 2010 WL 271300 at *2 (S.D. Ohio Jan. 15, 2010).

Plaintiffs assert that Defendants raised an argument in their Reply not made in the Motion to Decertify.  According to Plaintiffs, Defendants' Reply argues, for the first time, that the record contains no evidence that the opt-in Plaintiffs are similarly situated. (ECF No. 61-1 at 2.)  In their proffered Surreply, Plaintiffs introduce unsworn declarations signed by the opt-in Plaintiffs stating that they worked in positions similar to those held by the lead Plaintiffs. (ECF Nos. 61-2, 61-3 & 61-4.)  Defendants argue that whether the opt-in Plaintiffs are similarly situated is the

question to be decided by the Motion to Decertify and, therefore, cannot be the basis for filing a Surreply. (ECF No. 62.)

The Court agrees with Defendants that Plaintiffs have failed to establish good cause. *O'Brien*, a case upon which both parties rely heavily in their various memoranda, clearly states that when defendants file a motion to decertify a collective action "[t]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." 575 F.3d at 584. The question of whether record evidence exists to show that opt-in Plaintiffs are similarly situated, therefore, was first raised in this matter by Defendants' filing their Motion to Decertify. Furthermore, Defendants quoted the *O'Brien* court's stage two analysis in their Motion to Decertify. (ECF No. 58 at 3-4 ("For purposes of an FLSA collective action, 'plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or conduct in conformity with that policy proves a violation as to *all* the plaintiffs) (quoting *O'Brien*, 575 F.3d at 584) (emphasis added).) The opt-in Plaintiffs' status is the essence of the issue raised in a motion to decertify. The Court, therefore, finds that Defendants properly raised the question in their initial Motion.

Even assuming *arguendo* that Plaintiffs are correct, granting their Motion to File Surreply would not prevent decertification. The gravamen of Plaintiffs' Motion is that their Surreply provides sufficient evidence to find the opt-in Plaintiffs similarly situated because they all have claims for uncompensated shop and travel time arising from their employment with Defendants as asbestos abatement workers. (ECF No. 61-1 at 2-3.) As explained above, however, Plaintiffs have failed to show that they are similarly situated not because they failed to present similar claims but because they failed to adduce substantial evidence of Defendants' common policy that

allegedly produced those claims.  Plaintiffs Surreply offers no additional evidence of any such policy.

Accordingly, Plaintiffs have not shown good cause why this Court should grant them leave to file a Surreply to Defendants Reply to Plaintiffs' Opposition to Motion to Decertify.

### IV.  Conclusion

For the reasons stated above, Plaintiffs' Motion to File Surreply is **DENIED**. Furthermore, the Court finds that Plaintiffs in this matter are not similarly situated as required to maintain a FLSA collective action under 29 U.S.C. § 216(b).  Defendants' Motion to Decertify FLSA Collective Action is, therefore, **GRANTED**.  As a result, the claims of all opt-in Plaintiffs are **DISMISSED** without prejudice.  (ECF No. 42.)  *See Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (explaining that, upon decertification, "the opt-in plaintiffs are dismissed without prejudice").

**IT IS SO ORDERED**.


Date: November 2, 2015                             /s/ *Elizabeth A. Preston Deavers*
                                            ELIZABETH A. PRESTON DEAVERS
                                            UNITED STATES MAGISTRATE JUDGE